IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

**FILED**

UNITED STATES DISTRICT COURT
DENVER. COLORADO

**JUN 1 6 2026**

JEFFREY P. COLWELL
CLERK

| | |
|---|---|
| PETER BERNEGGER, an individual. <br><br> Plaintiff. <br><br> v. <br><br> JENA GRISWOLD, individually and in her official capacity as Secretary of State of the State of Colorado; JUDD CHOATE, individually and in his official capacity as Director of the Elections Division of the Colorado Department of State; ANDREW KLINE, individually and in his official capacity as Deputy Secretary of State of the State of Colorado; KATHLEEN WALLACE, individually and in her official capacity as Legal Analyst of the Elections Division of the Colorado Department of State; and CALEB THORNTON, individually and in his official capacity as a designated official of the Elections Division of the Colorado Department of State. <br><br> Defendants. | Civil Action No. _____ <br><br> COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF <br><br> (42 U.S.C. § 1983; U.S. Const. amends. I & XIV; 28 U.S.C. §§ 2201-2202) <br><br><br> **JURY TRIAL DEMANDED** |

1

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Peter Bernegger brings this civil-rights action against Defendants Jena Griswold, Judd Choate, Andrew Kline, Kathleen Wallace, and Caleb Thornton, individually and in their respective official capacities, and allege as follows:

I. Nature of the Action

1.    This is a civil-rights action under 42 U.S.C. § 1983 for compensatory, nominal, and punitive damages, and for prospective declaratory and injunctive relief, arising from Defendants' intentional, planned, and egregious violations of Plaintiff's rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

2.    This action is not, and does not seek to be, an enforcement action under the Help America Vote Act of 2002 ("HAVA"). HAVA is referred to herein only as the source of the statutorily-mandated administrative complaint procedure in which Defendants' constitutional violations occurred.

3.    The substantive merits of Plaintiff's underlying HAVA allegations are not at issue in this action.

4.    Beginning no later than April 9, 2026, and continuing through May 21, 2026, Defendants, acting at all times under color of state law, engaged in a deliberate, sequenced, and ratified course of action that deprived Plaintiff of:

2

(a)     the right to procedural due process under the Fourteenth Amendment, including the right to a neutral decision-maker, advance notice of the procedures and the presider, an opportunity to confront and cross-examine adverse witnesses, and a meaningful opportunity to respond to the evidentiary basis of an adverse final agency determination.

(b)     the right to substantive due process under the Fourteenth Amendment in the form of arbitrary, conscience-shocking governmental conduct in the adjudication of Plaintiff's federally-protected interests; and

(c)     the rights secured by the First Amendment, including the right to petition the government for redress of grievances through the statutorily-mandated administrative complaint procedure and the right to be free from retaliation for having engaged in that protected petitioning activity.

5.     Each of those violations is documented, in substantial part, by Defendants' own public records.

6.     The documentary record principally consists of the email correspondence between Defendant Wallace and Plaintiff from April 9, 2026 through May 5, 2026 (Exhibits B-E); the Notice of Hearing issued April 21, 2026 (Exhibit D); and the Department's own official transcript of the May 11, 2026 hearing, published by the Colorado Secretary of State on or about May 28, 2026 and obtained directly from the Department's website (Exhibit F).

7. The documentary record further consists of the May 21, 2026 Declaration of Defendant Caleb Thornton (Exhibit G) and the May 21, 2026 Final Agency Determination signed by Defendant Andrew Kline (Exhibit H).

8. Plaintiff seeks:

    (a) compensatory damages in an amount to be determined at trial.

    (b) nominal damages of one dollar ($1.00) per Defendant, per claim.

    (c) punitive damages in an amount sufficient to punish and deter.

    (d) limited prospective declaratory and injunctive relief precluding Defendants and their successors in office from offering or relying upon the May 21, 2026 Final Agency Determination as a precedent or as evidence in or against Plaintiff in any future administrative or judicial proceeding.

    (e) attorneys' fees and costs under 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d); and

    (f) such other and further relief as may be just and proper.

9. Plaintiff demands a trial by jury on all issues so triable.

II. Jurisdiction and Venue

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States, including 42 U.S.C. § 1983, the First Amendment, and the Fourteenth Amendment.

11. The Court has additional jurisdiction under 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1343(a)(4).

12. The Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and to grant prospective injunctive relief under 28 U.S.C. § 1343, 42 U.S.C. § 1983, and the inherent equitable power of the Court.

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendants Griswold, Choate, Kline, Wallace, and Thornton are public officials and employees of the State of Colorado residing in this district for venue purposes, their official offices being located at 1700 Broadway, Suite 200, Denver, Colorado 80290.

14. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims, including the pre-hearing email correspondence, the conduct of the May 11, 2026 administrative hearing, the execution and issuance of the May 21, 2026 Thornton Declaration, and the execution and issuance of the May 21, 2026 Final Agency Determination, occurred in this district.

15. Assignment of the case shall proceed in accordance with D.C.COLO.LCivR 40.1.

## III. Parties

### A. Plaintiff

16. Plaintiff Peter Bernegger is the sole Plaintiff in this action. He is a natural person and a resident of New London, Waupaca County, Wisconsin, with a mailing address of 1806 Brynwood Trace, New London, Wisconsin 54961, and a telephone number of (920) 551-0510.

17. Plaintiff Bernegger is the founder and director of Election Watch, Inc., a non-profit election-records research organization.

18. On February 20, 2026, Plaintiff Bernegger, jointly with Mr. Michael Cahoon of Highlands Ranch, Colorado (who is not a party to this action but is identified as a potential fact witness with personal knowledge of the matters at issue), filed a verified administrative complaint, HAVA Complaint No. 2026-001, with the Colorado Secretary of State (Exhibit A).

19. That filing is the predicate of the federally-mandated complaint procedure in which Defendants' constitutional violations occurred.

B. Defendants

20. Defendant Jena Griswold is the duly elected Secretary of State of the State of Colorado, having been first elected to that office in 2018 and re-elected in 2022.

21. Defendant Griswold is, in addition, a publicly announced candidate for the Office of Attorney General of the State of Colorado, and was an active candidate for that office at all times relevant to this Complaint, including during the entire 90-day pendency of HAVA Complaint No. 2026-001.

22. Defendant Griswold is a state-wide elected official whose tenure, authority, political standing, and prospects of election to higher office turn on the electorate's continuing confidence in her conduct of her current office.

23. She is the Chief State Election Official of Colorado, the named Respondent in HAVA Complaint No. 2026-001, and the official whose own conduct was the subject of the underlying administrative complaint.

24. At all times relevant to this Complaint, Defendant Griswold possessed direct authority over each of the other named Defendants and over the procedural framework, the conduct of the

6

May 11, 2026 hearing, the acceptance of the May 21, 2026 Thornton Declaration, and the issuance of the May 21, 2026 Final Agency Determination.

25. She is sued in her individual capacity for damages and in her official capacity for prospective declaratory and injunctive relief.

26. Defendant Judd Choate is the appointed Director of the Elections Division of the Colorado Department of State.

27. Plaintiff identified Defendant Choate in their administrative complaint and in their April 13, 2026 written reply as a witness whom they required to testify at the May 11, 2026 hearing, and Defendants categorically refused to produce him.

28. At all times relevant to this Complaint, Defendant Choate exercised direct, supervisory authority over Defendants Wallace and Thornton in their handling of HAVA Complaint No. 2026-001, including supervisory authority over the post-hearing investigation that produced the Thornton Declaration.

29. Defendant Choate is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief.

30. Defendant Andrew Kline is the appointed Deputy Secretary of State of the State of Colorado.

31. At all times relevant to this Complaint, Defendant Kline acted as the designee of Defendant Griswold within the meaning of 8 CCR 1505-1, Rule 13.2.9.

32. Defendant Kline presided over the May 11, 2026 hearing.

7

33. Defendant Kline ratified on the record the procedural denials previously communicated to Plaintiff by Defendant Wallace.

34. Defendant Kline accepted the May 21, 2026 Thornton Declaration, ten days after the hearing closed, without disclosing it to Plaintiff or affording any opportunity to confront, examine, or rebut it.

35. Defendant Kline signed and issued the May 21, 2026 Final Agency Determination relying upon that Declaration as the principal evidentiary basis for the merits findings.

36. Defendant Kline is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief.

37. The constitutional violations for which Defendant Kline is sued in his individual capacity are principally non-adjudicative, not adjudicative, and accordingly fall outside the scope of any absolute quasi-judicial immunity.

38. The non-adjudicative acts include:

    (i) pre-hearing concealment of his own identity as presider, an administrative act predating any adjudication.

    (ii) pre-hearing participation in the design and selection of the procedural framework that excluded cross-examination, witness production, and pre-hearing disclosure of Department evidence.

    (iii) post-hearing ex parte acceptance of the Thornton Declaration, conducted outside any on-the-record adjudicative process.

(iv)    sequenced administrative coordination with Defendants Wallace, Thornton, Choate, and Griswold; and

(v)    his role as a supervisory and administrative officer of the Colorado Department of State distinct from his role as adjudicator.

39.    The functional approach to quasi-judicial immunity requires the Court to focus on the nature of the function performed rather than the title of the official; the foregoing non-adjudicative acts are not adjudicative acts entitled to absolute immunity.

40.    Defendant Kathleen Wallace is an appointed Legal Analyst in the Elections Division of the Colorado Department of State.

41.    At all times relevant to this Complaint, Defendant Wallace personally drafted, signed, and transmitted to Plaintiff the principal Department correspondence by which the procedural denials at issue were communicated, including:

(a)    the April 9, 2026 email identifying herself and Defendant Thornton as the Secretary's designees and announcing that "the Division will not mount a defense at that hearing".

(b)    the April 13, 2026 email categorically refusing cross-examination.

(c)    the April 17, 2026 email circulating the draft Notice of Hearing and proposing the May 8 exhibit deadline.

(d)    the April 21, 2026 email and the Notice of Hearing categorically refusing to produce Defendants Griswold and Choate as witnesses; and

(e)    the May 21, 2026 Certificate of Service of the Final Determination.

9

42.    Defendant Wallace is sued in her individual capacity for damages and in her official capacity for prospective declaratory and injunctive relief.

43.    Defendant Caleb Thornton is the appointed Legal, Policy, and Rulemaking Manager of the Elections Division of the Colorado Department of State, a position he has held since 2018, and has been employed by the Elections Division since 2016.

44.    At all times relevant to this Complaint, Defendant Thornton acted as a co-designee of Defendant Griswold, with Defendant Wallace, within the meaning of C.R.S. § 1-1.5-105(2) and 8 CCR 1505-1, Rule 13.2.8.

45.    By his own sworn account, Defendant Thornton was "assigned to supervise the investigative team" that assessed the allegations in HAVA Complaint No. 2026-001. He co-designed the procedural framework that excluded cross-examination, witness production, and pre-hearing disclosure of Department evidence, and he co-authored the Notice of Hearing.

46.    Defendant Thornton is the sole sworn declarant whose previously-undisclosed May 21, 2026 Declaration was made the principal evidentiary predicate for the merits findings in the Final Agency Determination, without prior disclosure to Plaintiff or any opportunity for confrontation, examination, or rebuttal.

47.    Defendant Thornton is sued in his individual capacity for damages and in his official capacity for prospective declaratory and injunctive relief.

C. Defendant Griswold's Elected Status, Candidacy for Higher Office, and the Appointed Status of the Other Defendants

10

48. Defendant Griswold's tenure and authority as Secretary of State derive directly from her continued election by Colorado voters, and her personal political ambitions extend to a publicly announced candidacy for Colorado Attorney General.

49. Her personal interest in maintaining her current office, in her political standing, and in her active campaign for election to higher office constitutes a personal motivation independent of, and at points opposed to, the State's institutional interests in a neutral and accurate administration of the federally-mandated HAVA complaint procedure.

50. Defendants Choate, Kline, Wallace, and Thornton, by contrast, are appointed and serve at the pleasure of Defendant Griswold or her designees.

51. Each of those appointed Defendants accordingly has a personal employment and reputational interest in pleasing the elected official from whose authority his or her own position derives.

52. These personal interests are relevant to the personal-motivation analysis pleaded in Count IV.

53. Each Defendant acted at all times under color of state law within the meaning of 42 U.S.C. § 1983.

54. Non-defendant fact witnesses. Plaintiff does not name as defendants Talia Kraemer and Elliot Hood, Assistant Attorneys General with the Colorado Department of Law, or "Nathan," the Department information-technology staff member referenced in the April 17, 2026 Wallace email.

55.     Ms. Kraemer and Mr. Hood are anticipated fact witnesses with personal knowledge of the design, communication, and ratification of the procedural denials described herein, because they were named recipients on each of the Department emails described in Section IV.C below and served as legal advisors to the other named Defendants during the periods relevant to this Complaint.

56.     Plaintiff reserves all rights to depose Ms. Kraemer and Mr. Hood, and the unnamed SCORE data analysts and SCORE manager referenced in the Thornton Declaration, in the ordinary course of discovery.

IV. Factual Allegations

A. The State of Colorado's Affirmative Creation of the HAVA Complaint Entitlement, and the Constitutional Property Interest That Followed

57.     The Help America Vote Act of 2002, 52 U.S.C. §§ 20901 et seq., is referred to in this Complaint solely as the source of the federally-mandated administrative complaint procedure in which Defendants' constitutional violations occurred.

58.     HAVA § 402, 52 U.S.C. § 21112, requires each State that receives federal HAVA funds to establish and maintain a state-based administrative complaint procedure through which any person who believes that there is a violation of any provision of Title III of HAVA may file a complaint, with the right to a hearing on the record and a final determination within 90 days.

59.     The State of Colorado affirmatively opened the door to the HAVA complaint procedure. By its own deliberate legislative, regulatory, and administrative acts, the State of Colorado

12

created, and committed to maintain in perpetuity, the very administrative complaint procedure that Plaintiff invoked in this matter.

60.    Specifically:

(a)    the Colorado General Assembly enacted C.R.S. § 1-1.5-105, codifying Colorado's HAVA complaint procedure.

(b)    the Colorado Secretary of State promulgated 8 CCR 1505-1, Rule 13.2, and 8 CCR 1505-3, Rule 3, the procedural regulations governing the complaint procedure.

(c)    the State of Colorado filed its 2008 HAVA State Plan with the United States Election Assistance Commission, in which Section 9 expressly committed the State to the operational complaint procedure described therein; and

(d)    the State of Colorado has accepted and expended approximately $43.4 million in federal HAVA requirements payments, the receipt of which is statutorily conditioned on the State's maintenance of the complaint procedure.

61.    Limited discretion and required outcomes under the state-created procedure. The state-created HAVA complaint procedure does not commit decisional discretion to the Department at large.

62.    To the contrary, the procedure imposes mandatory, discretion-limiting requirements that fix the State's obligations as a matter of state law, including:

(a)    the Department shall accept a complaint that meets the prescribed form and content.

(b)    the Department shall provide a hearing on the record upon timely request by the complainant.

13

(c)     the Department shall issue a final determination on the complaint within 90 days of filing.

(d)     the determination shall be based on a developed record and the substantive standards prescribed by Title III of HAVA and the 2008 Colorado State Plan.

(e)     where the Department finds a violation, it shall provide an appropriate remedy; and

(f)     the Department shall preserve and produce the record for judicial review.

63.     The procedure thereby requires particular outcomes when statutory conditions are met, and it limits the official discretion that would otherwise insulate the Department from procedural-due-process scrutiny.

64.     The constitutional property interest. Plaintiff does not allege a property interest in procedure for procedure's sake.

65.     Plaintiff alleges a protected property interest in the accepted, docketed, state-created adjudicatory claim that Colorado law and HAVA required Defendants to resolve under legal standards.

66.     Once Plaintiff filed a written, sworn, and notarized administrative complaint that Colorado accepted and docketed as HAVA Complaint No. 2026-001, Plaintiff possessed more than an abstract desire for government action.

67.     Plaintiff's protected interest is not in any procedure for procedure's sake. Plaintiff's protected interest is in the accepted, docketed, sworn, state-created adjudicatory cause of action that Colorado law and Colorado's regulatory framework required the Department to resolve under fixed substantive standards. The procedural protections invoked herein,

14

including notice, neutral adjudicator, opportunity to confront adverse evidence, and decision on the closed record, are not freestanding interests. They are the constitutional minima necessary before the State may extinguish the substantive adjudicatory claim Plaintiff acquired by filing on February 20, 2026.

68.     Distinction from cases denying a property interest in mere procedure. Plaintiff's protected property interest is distinguishable from the kind of interest the Supreme Court has declined to recognize where the underlying state law confers no substantive entitlement. Four independent grounds support that distinction in this case.

69.     First, Plaintiff does not assert a property interest in process for process's sake. He asserts a property interest in his accepted, docketed adjudicatory cause of action, HAVA Complaint No. 2026-001. The procedural protections invoked are subsidiary procedural rights attached to that vested claim, not the claim itself.

70.     Second, the 90-day adjudication requirement is imposed by federal law, specifically HAVA Section 402(a)(2)(F), 52 U.S.C. Section 21112(a)(2)(F), not a discretionary state mandate to executive officers. Any concern about federalizing state-law commands is inapplicable where Congress itself has imposed the duty.

71.     Third, Colorado accepted and docketed Plaintiff's complaint on February 20, 2026. Acceptance and docketing was a discretionary act that, once performed, vested the claim. This stands in contrast to interests contingent on prosecutorial or executive discretion that may be exercised or withheld at any time.

72. Fourth, the interest at stake is the adjudicatory outcome itself, the right to a determination on the merits on the closed record, not the right to specific enforcement steps.

73. Plaintiff's claim is therefore within the heartland of established constitutional doctrine recognizing state-created adjudicatory claims as constitutional property, and outside any doctrinal narrowing that limits procedural-only interests detached from a substantive entitlement.

74. They possessed a state-created claim for adjudicatory redress, available to "any person" under HAVA § 402, 52 U.S.C. § 21112(a)(2)(B), terminable only by a final agency determination reached through constitutionally adequate process.

75. That accepted, docketed, state-created adjudicatory claim is a species of property within the meaning of the Due Process Clause of the Fourteenth Amendment, protected against deprivation by the State that created and accepted it.

76. Plaintiff's invocation and perfection of the entitlement. Plaintiff invoked and perfected the state-created entitlement on February 20, 2026, by filing the verified administrative complaint described above.

77. Upon Colorado's acceptance and docketing of that sworn complaint as HAVA Complaint No. 2026-001, Plaintiff acquired a protected property interest in their state-created claim for adjudicatory redress and in the accompanying right to use Colorado's established HAVA adjudicatory process to have that claim considered and its merits fairly judged under applicable legal standards.

16

78. That property interest was not a freestanding interest in procedure for procedure's sake; it was the accepted adjudicatory claim and state-created right of redress that Defendants could not deny, dismiss, or extinguish by final agency action without constitutionally adequate process.

79. Adjudicative, not legislative. The May 11, 2026 hearing and the resulting May 21, 2026 Final Agency Determination were quintessentially adjudicative, not legislative, in character.

80. The proceeding addressed the individual grievances of two named Plaintiff against five named officials; it depended on individualized findings of fact developed on a particularized record; and it produced a determination directed at, and binding upon, Plaintiff and Defendants alone.

81. Traditional procedural due process requirements of notice and hearing attach to such individualized, fact-specific proceedings.

82. The State's deprivation. From February 20, 2026 forward, the State of Colorado, acting through Defendants, did not administer the procedure in a manner consistent with the Due Process Clause.

83. Through the course of conduct described in Sections IV.C through IV.G below, the pre-hearing denials, the hearing-day violations, the post-hearing Thornton Declaration ambush, and the May 21, 2026 Final Agency Determination, Defendants deprived Plaintiff of the accepted, docketed, state-created adjudicatory claim that the State of Colorado had itself affirmatively created and accepted.

84. That deprivation is the constitutional injury underlying each of Counts I, II, III, and IV below.

85. Plaintiff does not assert that HAVA Title III confers a privately enforceable federal substantive right. Plaintiff asserts a constitutional property interest in his accepted, docketed, state-created HAVA Section 402 adjudicatory claim under Colorado state law.

86. Colorado affirmatively created an administrative adjudicatory procedure available to any person under HAVA Section 402(a)(2)(B). The creation occurred through three independent sources: the 2008 HAVA State Plan filed under Section 254 with the United States Election Assistance Commission; C.R.S. Section 1-1.5-105; and the regulations at 8 CCR 1505-1 Rule 13.2 and 8 CCR 1505-3 Rule 3.

87. The property interest exists independent of any private federal right under HAVA itself. It exists by reason of Colorado's own statutory and regulatory framework, and well-established constitutional doctrine recognizes that state-created adjudicatory entitlements are constitutional property protected by the Due Process Clause regardless of whether the underlying federal statute confers a private right of action.

B. Plaintiff's Administrative Complaint and the Onset of the Dispute

88. On February 20, 2026, Plaintiff personally filed at the Office of the Colorado Secretary of State a verified, sworn, notarized administrative complaint pursuant to HAVA § 402 and C.R.S. § 1-1.5-105, asserting seven counts of alleged HAVA Title III violations (Exhibit A).

89. The substantive merits of those allegations are not at issue in this action.

18

90. From the date of filing through April 8, 2026, the parties engaged in routine correspondence about scheduling and procedure. Defendant Wallace served as the Department's principal point of contact and identified Defendant Thornton as a co-designee.

91. By no later than April 9, 2026, the parties had begun to dispute the procedural framework of the HAVA complaint procedure.

C. The Pre-Hearing Constitutional Violations (April 9-May 8, 2026)

92. Each of the following denials was communicated to Plaintiff in writing, by email, prior to the May 11, 2026 hearing; each was preserved in writing by Plaintiff in correspondence dated April 13, April 21, April 27, and May 5, 2026; each was ratified by Defendant Kline on the record at the convening of the May 11, 2026 hearing; and each is a Department record.

93. First denial, categorical refusal of cross-examination. By email dated April 13, 2026, Defendant Wallace wrote to Plaintiff, with Defendant Thornton in receipt: "You may present any evidence available to you at the hearing. There will be no cross examination at the hearing. Because this is not a hearing under the Colorado APA, nor a hearing in front of an AHO, you do not have the right to demand the appearance or testimony of witnesses at or before this hearing." (Exhibit C.)

94. Second denial, refusal to produce Defendants Griswold and Choate. Plaintiff requested in writing on April 13, 2026 that Defendants Griswold and Choate appear and testify at the

May 11, 2026 hearing as material fact witnesses with personal knowledge of the practices that were the subject of the administrative complaint.

95. By email dated April 21, 2026, Defendant Wallace wrote: "You may call witnesses available to you, but you do not have the authority to demand the appearance of other witnesses"; and again: "both Secretary Griswold and Director Choate will not be available as witnesses in this hearing." (Exhibit D.)

96. Third denial, refusal to disclose any Department witness list, exhibit list, or investigator report. Plaintiff requested in writing on April 27, 2026 that the Department, by May 6, 2026, produce any written investigation report, memorandum, or finding the Division would rely upon at the hearing; the names and titles of any Division witnesses; and a list of any Division exhibits.

97. Defendants produced none of these items before the hearing. The Department's silence on these requests was preserved on the record by Plaintiff Bernegger at the opening of the hearing: "we reviewed our requests for investigator report, a witness list, exhibit list, and we have not received any responsive answer.".

98. Fourth denial, concealment of the presider's identity. The April 21, 2026 Notice of Hearing did not identify the official who would preside.

99. Plaintiff requested in writing on April 27, 2026 the name and title of the presider, that individual's role in the underlying investigation, and any statement of actual or potential conflict of interest.

100. Defendants refused. Plaintiff first learned, at the moment the May 11, 2026 hearing convened, that Defendant Kline, Defendant Griswold's own Deputy Secretary of State, would preside.

101. That concealment denied Plaintiff any meaningful pre-hearing opportunity to move to recuse the presider or to insist on the Administrative Hearing Officer procedure available under 8 CCR 1505-3.

102. Fifth denial, unilateral selection of a non-neutral adjudicator. Although Colorado regulations provide an Administrative Hearing Officer procedure carrying, on its face, the qualification and conflict-of-interest protections of 8 CCR 1505-3, Rule 3.2.8 and Rule 3.17, Defendants invoked instead the "designee" procedure of 8 CCR 1505-1, Rule 13.2.9.

103. Under that designee procedure, the Secretary's own designee, a direct subordinate of the very official whose conduct was the subject of the complaint, adjudicates the complaint.

104. The Department's March 31, 2026 referral offer neither cured the deprivation alleged nor constituted a knowing relinquishment of any right.

105. On or about March 31, 2026, the Department offered to refer Plaintiff's complaint to "the Department's Administrative Hearing Officer" under 8 CCR 1505-3, but conditioned that referral on Plaintiff's waiver of his right under HAVA § 402, 52 U.S.C. § 21112, and C.R.S. § 1-1.5-105 to a final determination within ninety days.

106. The offer thereby required Plaintiff to surrender one federally protected interest, the ninety-day determination, as the price of obtaining another, a differently configured adjudicator,

a dilemma that the Department's own rule structure created and that the Constitution did not require Plaintiff to accept.

107. The offered Administrative Hearing Officer was, by the Department's own description, the Department's own officer, retained by and internal to the Department whose Secretary was the named Respondent, and not an adjudicator outside the Secretary's authority.

108. The offer never identified who that officer would be, never disclosed that officer's role, if any, in the underlying investigation, and never represented that the officer would be free of the conflicts of interest that Plaintiff had identified in writing.

109. Nothing in the offer would have prevented the Department from staffing the Administrative Hearing Officer track with the same personnel, including Defendants Wallace, Thornton, or Kline, who in fact designed, communicated, and conducted the proceeding that occurred.

110. Plaintiff's insistence on the ninety-day determination that federal law guarantees, rather than acceptance of an unidentified Department officer of undisclosed neutrality on the condition of waiving that federal right, therefore cannot be construed as a waiver of, or as consent to, the absence of a neutral decision-maker, the concealment of the presider's identity, the categorical denial of confrontation, or the post-hearing evidentiary practices alleged herein.

111. The Department's April 21, 2026 email, transmitted by Defendant Wallace, stated: "this hearing is being run in accordance with 8 CCR 1505-1, specifically Election Rule 13.2.9. There is no other requirement in Federal law, Colorado law, or 8 CCR 1505-1, Rule 13.2.9 that the HAVA hearing be held in the format or manner that you demand in your email.".

112. Sixth denial, refusal to issue written rulings on objections. Plaintiff requested in writing on April 27, 2026 that each Department procedural denial be reduced to a written ruling by the presider, signed and dated, identifying the specific rule, statute, or order relied upon and the factual basis for the determination.

113. Defendants refused, and no written ruling identifying a rule, statute, or order authorizing any of the foregoing denials was ever produced.

114. Seventh denial, unilateral imposition of a one-sided pre-hearing exhibit deadline. The Notice of Hearing, transmitted by Defendant Wallace on April 21, 2026, imposed a binding 9:00 a.m. Friday, May 8, 2026 deadline on Plaintiff for the submission of every exhibit and the locking of every witness, three days before the hearing.

115. The Department itself, in contrast, did not produce any exhibit, witness list, or investigator report at the hearing, and reserved the right to introduce its principal evidence, Defendant Thornton's Declaration, ten days after the hearing closed.

116. Plaintiff complied with the deadline in good faith while preserving their objection to it on the record.

117. Cumulative pre-hearing course of conduct. Each of the foregoing denials was preserved in writing by Plaintiff in the April 27, 2026 letter, a ten-section comprehensive reply to the Department, and again in their May 5, 2026 follow-up reply (Exhibit E).

118. Defendants, through Defendant Wallace's email correspondence, Defendant Thornton's acknowledged co-designee role, and the supervisory authority of Defendants Choate and Griswold, designed, communicated, and ratified each denial with full knowledge of

Plaintiff's written objections and with the foreseeable purpose of insulating the Department's investigation from adversarial testing.

D. The Hearing-Day Constitutional Violations (May 11, 2026)

119. The May 11, 2026 hearing convened at about 9:02 a.m. Mountain Time and adjourned at about 11:02 a.m. Mountain Time. Defendant Kline presided.

120. The Department's official transcript of the hearing, published on its website on or about May 28, 2026, and referenced in this Complaint as the "Department Transcript" (Exhibit F), is incorporated by reference as the primary documentary evidence of the hearing-day violations alleged below.

121. Where this Complaint quotes the hearing, the quotations are drawn from the Department Transcript itself.

122. Concealed identity of presider, revealed only at convening. Defendant Kline opened the hearing by identifying himself for the first time on the record: "I'm Deputy Secretary of State Andrew Kline, designee of the Secretary of State.".

123. That was the first notice Plaintiff received of the presider's identity. The objection Plaintiff Bernegger preserved on the record on this point, recorded in the Department Transcript, was: "we petitioners just learned, uh, that Deputy Kline was the presider of this hearing when the hearing began. We had no prior notice of that.".

124. Express disclaimer of procedural protections. Defendant Kline expressly stated on the record that the proceeding "is not an adjudication under the Colorado Administrative Procedure Act"; that it is "not a trial"; and that it is "not subject to the federal or state rules

24

of evidence or civil procedure, nor are we subject to the state or federal Administrative Procedure Act.".

125. By those statements, Defendant Kline expressly disclaimed every procedural framework that would otherwise have afforded Plaintiff the procedural protections at issue, including the right to confront and cross-examine adverse witnesses.

126. Preserved objections, on-the-record acknowledgement, and no ruling. Plaintiff Bernegger placed on the record at the opening of the hearing each of the preserved objections described in Section IV.C above.

127. The Department Transcript records his statement: "us petitioners are placing the following objections on the record, each to preserve for any judicial review and/or alternative dispute resolution that may or may not come later.... we petitioners do not consent to the Department's exclusion of cross-examination announced in the April 13th, 2026 Kathleen Wallace email.".

128. "Uh, we also don't consent to the Department's refusal to produce Secretary, uh, Jena Griswold or Director [Choate] as witnesses.".

129. "And we don't consent to the any extension of the 90-day final determination... we reviewed our requests for investigator report, a witness list, exhibit list, and we have not received any responsive answer as of, uh, today or, or the deadline... back on Friday." Defendant Kline responded only: "I'll also note that any objections are noted for the record." He issued no ruling on any objection.

130. Absence of Defendants Griswold and Choate. The Department Transcript confirms that neither Defendant Griswold nor Defendant Choate appeared at the hearing, despite Plaintiff's written requests that each be made available as a witness.

131. Absence of any Department witnesses, exhibits, investigator report, or cross-examination. The Department Transcript records no Department witness testimony, no Department exhibits, no Department investigator report, and no cross-examination of any witness.

132. Every speaker at the hearing, apart from Defendant Kline as presider, was either a Plaintiff or a witness called by Plaintiff.

133. The Department mounted no defense; it called no witness; it produced no documentary evidence; and it offered no opportunity for confrontation of any kind.

134. The Department's own April 9, 2026 representation that "the Division will not mount a defense at that hearing" was carried out at the hearing as a matter of fact.

135. The hearing-day record, as memorialized in the Department's own official transcript, thus establishes that Plaintiff was afforded no neutral decision-maker, no opportunity to confront adverse witnesses, and no meaningful response to any case the Department intended to make.

136. Each of those denials is independently a denial of procedural due process.

E. The Post-Hearing Constitutional Violations and the May 21, 2026 Ambush

137. Between May 11, 2026, the close of the hearing, and May 21, 2026, the issuance of the Final Agency Determination, Defendants engaged in further constitutional violations of Plaintiff's due-process rights, beyond those already committed before and at the hearing.

138. The Thornton Declaration. On a date no earlier than May 11, 2026 and no later than May 21, 2026, Defendant Thornton executed a five-page sworn Declaration concerning the substantive merits of Plaintiff's administrative complaint (Exhibit G).

139. The Declaration is signed and dated May 21, 2026, the same day as the Final Agency Determination, the ninetieth day after the filing of the administrative complaint, and ten days after the close of the May 11, 2026 hearing.

140. Defendant Thornton was identified to Plaintiff no later than April 9, 2026 as one of the two Department designees assigned to the matter. He was thus a known and obvious witness with first-hand knowledge of the substantive issues.

141. Defendant Thornton was not, however, produced at the May 11, 2026 hearing; he was not identified to Plaintiff as a Department affiant or as a sworn witness before May 21, 2026; his Declaration was not served on Plaintiff in advance of, contemporaneously with, or for any meaningful period after the hearing; and Plaintiff was given no opportunity to confront him, examine him, depose him, or otherwise test his sworn statement.

142. The merits investigation was conducted off the record and after the hearing closed. The Thornton Declaration establishes, on its face, that the Department's substantive merits investigation was performed after the close of the proceeding in which Plaintiff was entitled to participate.

143. Defendant Thornton swears that he "received the Complainants' exhibits... on the evening of May 7, 2026" (Decl. § 8); that his "analysis began" only thereafter (Decl. § 9); and that

his investigation "consisted of comparing the voter identification numbers provided by the Complainants to the data found in SCORE" (Decl. § 16).

144.   The Final Agency Determination confirms that "[f]ollowing the hearing, Elections Division investigators thoroughly reviewed the exhibits and considered the testimony presented at the hearing," and only then "recommended dismissal.".

145.   The dispositive merits work thus occurred during the very period, May 11 through May 21, 2026, in which Plaintiff had no participatory role and received no disclosure.

146.   Reliance on undisclosed corroborating witnesses. Defendant Thornton further swears that he "discussed and reviewed [his] findings with several data analysts from the SCORE team and with the SCORE manager," who "agreed with [his] findings and analysis" (Decl. § 17).

147.   None of those individuals was identified to Plaintiff, produced at the hearing, or made available for examination. The Department thus rested its merits conclusions in part on the concurrence of unnamed witnesses whom Plaintiff was never permitted to confront.

148.   Principal evidentiary reliance. The Final Agency Determination, signed by Defendant Kline and dated May 21, 2026, relies upon the Thornton Declaration at no fewer than thirteen distinct points as the principal evidentiary basis for the Department's merits findings, citing the Declaration by paragraph in successive footnotes throughout its analysis.

149.  Without the Thornton Declaration, the Department's merits findings have no sworn evidentiary support; with it, the Department's principal evidence was unrebutted because Plaintiff had no opportunity to test it.

150.  The Declaration's material internal contradictions, which only confrontation could have exposed. Plaintiff do not ask this Court to resolve the substantive accuracy of the Thornton Declaration or the underlying HAVA allegations. Plaintiff alleges only that the Declaration is internally contradictory and methodologically incomplete on its face, and that these are precisely the defects that cross-examination and confrontation exist to expose. The following contradictions appear within the four corners of the Declaration on which the Final Agency Determination principally relied:

151.  Contradiction as to whether vote history can change after certification. Defendant Thornton swears that "[v]ote history cannot be added or removed from a voter record after an election is closed and certified" (Decl. § 12), a proposition the Final Agency Determination expressly adopts as a merits conclusion.

152.  Yet Defendant Thornton also swears that a specific record, voter ID No. 601653566, "did not include vote history for the 2024 General Election" when it appeared on the report generated after that election, but "included vote history for the 2024 General Election" when it later appeared on the report generated after the 2025 Coordinated Election (Decl. § 19(f)).

153.  By Defendant Thornton's own sworn account, the 2024 vote history reflected on that certified record changed after the 2024 election was certified. The Declaration attributes

the change to a post-certification "merge" (Decl. § 19(c)-(e)), but the sworn factual admission, that the vote-history content of a certified record changed after certification, is the very phenomenon the Declaration elsewhere swears "cannot" occur.

154. Contradiction as to whether records were altered after certification. Defendant Thornton swears that "the subject records were not altered post-certification" (Decl. § 16).

155. He then describes, as his own findings, post-certification merges (Decl. § 19, "[t]hat merge occurred after the 2024 General Election"), confidential statuses added after the 2024 election (Decl. § 21, status added "in July of 2025"), and confidential statuses removed after the 2024 election (Decl. § 23, status removed "in October 2025"). Each of those modifications altered what the certified record reflected on successive public reports.

156. The conclusion that nothing was "altered post-certification" is contradicted by the declarant's own examples of post-certification modification.

157. Admission that the official reports are not consistent year-over-year. Defendant Thornton swears that the EX-002 report is a consistent "snapshot in time" of registered voters (Decl. §§ 11, 14).

158. He then admits that the report generated after the 2025 Coordinated Election "contains voters who were 'canceled,' 'pending,' or 'incomplete'" (Decl. § 26), that "[t]his was unique to the 2025 EX-002; voters with these statuses did not appear on prior EX-002s" (Decl. § 31), and that this methodological change "does explain why Complainants appear to believe that hundreds of thousands of records were 'added' to the 2025 EX-002 data" (Decl. § 29).

30

159. The Declaration thus concedes both the magnitude of the discrepancy Plaintiff identified and that the Department's own official reports were generated under materially different criteria from one election to the next.

160. Admission of an inability to confirm the data, paired with a categorical conclusion. Defendant Thornton swears that "[b]ecause the Complainants did not provide the originating data files with their exhibits, I cannot confirm that these voter identification numbers came from any specific EX-002 produced by this office" (Decl. § 15).

161. He nonetheless reaches the categorical conclusion that "the complainants' assertions were factually inaccurate and thus without merit" (Decl. § 33). A sworn inability to confirm the provenance of the underlying data cannot support a categorical merits conclusion as to that same data.

162. A sample-based investigation supporting a categorical "without merit" finding. Defendant Thornton swears that his conclusion "was based on investigating a large volume of the identified voter ID records" (Decl. § 17), not all of them, and that he "picked, at random, several voter ID numbers" to test (Decl. § 25(b)).

163. A sample-based investigation cannot, without more, support the categorical conclusion that the entire body of Plaintiff's assertions was "without merit." The reliability of the sampling methodology and the basis for extrapolating from it to a universal conclusion are quintessential subjects of cross-examination.

164. The materiality of the denied confrontation. The foregoing contradictions and methodological gaps are not pleaded to litigate the HAVA merits.

31

165. They are pleaded to establish that the confrontation, cross-examination, and pre-decisional disclosure that Defendants withheld were material, not formal.

166. Had the Thornton Declaration been disclosed before the close of the proceeding and subjected to confrontation, Plaintiff could have tested each of the contradictions identified above on the record.

167. Defendants' decision to create the Declaration after the hearing, to withhold it until Day 90, and to make it the principal basis of the Final Agency Determination deprived Plaintiff of any opportunity to expose, on the record, defects that appear on the face of the Department's own sworn evidence.

168. Defendants Griswold, Choate, Kline, Wallace, and Thornton each had the authority and the opportunity to disclose the Declaration to Plaintiff at any time between the close of the hearing and the issuance of the Final Determination, ten full calendar days during which Plaintiff was available, were preserving their procedural objections in writing, and remained the principal complainants of record. None did so.

169. The timing of the Thornton Declaration, executed on Day 90 of the statutory window, on the same day as the Final Determination, with no remaining administrative remedy in which to test it, is independently probative of an intentional and planned deprivation of Plaintiff's due-process rights.

170. The Department imposed a pre-hearing exhibit deadline three days before the hearing on Plaintiff, the one-sided exhibit deadline described above, while reserving to itself the right to introduce its principal sworn evidence ten days after the hearing closed.

171. The Final Agency Determination, signed by Defendant Kline on May 21, 2026, dismissed all seven counts of the administrative complaint on jurisdictional and merits grounds, with the Department's merits findings resting principally on the Thornton Declaration (Exhibit H).

172. It is the operative final agency action of the Colorado Department of State on the administrative complaint and the consummation of the constitutional violations alleged in this Complaint.

F. Defendants' Own Official Records as the Evidentiary Foundation

173. The factual allegations of this Complaint are drawn principally from Defendants' own official records, including:

(a) the Department email correspondence dated April 9, April 13, April 17, April 21, and May 21, 2026, each authored or signed by Defendant Wallace and copied to Defendant Thornton and to Department of Law attorneys Talia Kraemer and Elliot Hood (Exhibits B-E).

(b) the April 21, 2026 Notice of Hearing transmitted by Defendant Wallace (Exhibit D).

(c) the official transcript of the May 11, 2026 hearing, prepared from the Department's own audio recording and published on the Colorado Secretary of State's official website on or about May 28, 2026 (the "Department Transcript," Exhibit F).

(d) the May 21, 2026 Declaration of Defendant Caleb Thornton (Exhibit G); and

(e)    the May 21, 2026 Final Agency Determination signed by Defendant Andrew Kline (Exhibit H).

174.    Plaintiff reserves all rights to rely upon further documentary and testimonial evidence, including depositions of Defendants and of fact witnesses Talia Kraemer and Elliot Hood, to be developed in discovery.

## G. The May 11, 2026 Hearing Was a Sham

175.    When viewed as a whole, and with the benefit of the Department's own published transcript and Final Agency Determination, the May 11, 2026 hearing was, in the constitutional sense, a sham proceeding.

176.    Documented attempt to compel the appearance of material witnesses. Plaintiff did not merely complain about the absence of Defendants Griswold and Choate at the May 11, 2026 hearing. Plaintiff made specific, contemporaneous, and documented requests that each of those Defendants be made available as material fact witnesses with personal knowledge of the practices that were the subject of the administrative complaint.

177.    Plaintiff made the requests in writing in his April 13, 2026 reply and again in his April 27, 2026 letter, and renewed each request orally on the record at the opening of the May 11, 2026 hearing. Defendants categorically and unilaterally refused to produce either Defendant Griswold or Defendant Choate.

178. Plaintiff was thereby actively inhibited and restricted from confronting the two officials whose conduct was the principal subject of the proceeding.

179. Post-hearing introduction of dispositive sworn evidence without opportunity to move for reopening. The Thornton Declaration was introduced after the close of the evidentiary record.

180. The Department imposed a hard May 8, 2026 pre-hearing exhibit deadline on Plaintiff while reserving to itself the right to introduce its principal sworn evidence ten calendar days after the May 11, 2026 hearing closed. Plaintiff was given no notice that the Declaration would be filed, no opportunity to move for the reopening of the evidentiary record, and no procedural avenue within the 90-day statutory window in which to test the Declaration.

181. This timing reflects a deliberate decision by Defendants to position the Declaration as a manufactured record, after the formal hearing had ended, for the purpose of supporting an adverse Final Agency Determination on the merits.

182. Concealment of the presider's identity through the issuance of the Final Agency Determination. The April 21, 2026 Notice of Hearing did not identify the official who would preside. Plaintiff's April 27, 2026 letter expressly requested the presider's name, role, and any conflicts disclosure. Defendants refused.

183. Plaintiff first learned, at the moment the May 11, 2026 hearing convened, that Defendant Kline, the direct subordinate of the very official whose conduct was the subject of the complaint, would preside. Defendant Kline's identity as presider, and as the person who

would ultimately sign and issue the May 21, 2026 Final Agency Determination, was not disclosed at any point before that issuance.

184. That concealment foreclosed any meaningful pre-determination opportunity for Plaintiff to move for recusal, to challenge structural bias, or to seek the alternative independent Administrative Hearing Officer procedure available under 8 CCR 1505-3.

185. A proceeding that systematically forecloses every meaningful element of adversarial testing while preserving only the form of a hearing is not a hearing within the meaning of the Fourteenth Amendment.

186. The hearing bore none of the features that distinguish a constitutionally adequate adjudication from a sham: the decision-maker was not neutral; he was a direct subordinate of the very official whose conduct was at issue.

187. The Department called no witness, produced no exhibit, and offered no investigator report at the hearing.

188. There was no opportunity to confront, examine, or cross-examine any Department witness, because none was made available.

189. The presider's identity, role in the underlying investigation, and conflicts disclosures were withheld from Plaintiff until the hearing convened.

190. And the sworn evidence on which the Department's merits findings ultimately rested, the May 21, 2026 Thornton Declaration, was not in existence as of the hearing date, was not disclosed in advance, and was not produced for any adversarial testing whatsoever.

191. What occurred on May 11, 2026 was a structured, pre-scripted, one-sided exercise in the formal trappings of a hearing, designed to comply with the 90-day window of HAVA § 402 while preserving to Defendants the unrebutted last word on the merits.

192. The Department itself, through Defendant Wallace's April 9, 2026 email, conceded the point in advance: "The Division will not mount a defense at that hearing.".

193. Defendants kept that promise. They then conducted the merits investigation off the record, without Plaintiff's participation, and issued the Final Agency Determination on the ninetieth day, predicated on a sworn declaration Plaintiff had no opportunity to test.

194. Predetermined outcome. The pattern of denials, the absence of any genuine adversarial process, the post-hearing introduction of dispositive sworn evidence, and the timing of the Final Determination on the very last day of the statutory window together support the inference, to be tested at trial, that the outcome of the proceeding was predetermined before the hearing convened.

195. A proceeding whose outcome is predetermined is not a hearing within the meaning of due process.

196. Plaintiff alleges that the sham character of the hearing was not the product of negligence, oversight, or exigency, but the foreseeable and intended consequence of the planned course of conduct described in Sections IV.C through IV.E above.

197. As alleged in Count IV below, that planned course of conduct gives rise to liability for civil-rights conspiracy under 42 U.S.C. § 1983.

H. Facts Supporting Knowledge, Intent, and Pre-Planning

37

198. The following sequence of dated, documented acts supports the reasonable inference that Defendants did not accidentally fail to provide constitutionally adequate process; they intentionally structured the proceeding to deny Plaintiff any meaningful opportunity to test the Department's adverse evidence.

199. April 9, 2026: Defendant Wallace identified herself and Defendant Thornton, in writing, as the Secretary's "designees" assigned to the matter, and announced that "the Division will not mount a defense" at the hearing.

200. April 13, 2026: Defendant Wallace wrote, categorically, that there would be "no cross examination at the hearing" and that Plaintiff had no right to demand witness testimony.

201. April 17, 2026: Defendant Wallace circulated the draft Notice of Hearing to Defendant Thornton, to Talia Kraemer and Elliot Hood of the Colorado Department of Law, and to Department information-technology staff member "Nathan," expressly soliciting concurrence in the procedural design and writing that "Caleb and I have been working on the Notice of Hearing.".

202. In the same April 17, 2026 email, the proposal to require Plaintiff to submit all exhibits by 9:00 a.m. on May 8, 2026 was advanced on the stated rationale that same-day submission "could cause a lot of technical issues" and would avoid having to "allow the complainants to be presenters.".

203. April 21, 2026: Defendant Wallace transmitted the Notice of Hearing, without identifying the presider, and announced in writing that Defendants Griswold and Choate "will not be available as witnesses in this hearing" and that the proceeding would be governed by 8

CCR 1505-1, Rule 13.2.9 rather than the independent procedure under 8 CCR 1505-3, Rule 3.

204. April 27, 2026 and May 5, 2026: Plaintiff replied in writing, preserved every objection, and requested that the presider's identity, conflicts disclosure, witness list, exhibit list, and investigator report be produced. Defendants refused or did not respond.

205. May 7-8, 2026: Defendant Thornton received Plaintiff's exhibits on the evening of May 7, 2026, and Defendants' unilateral pre-hearing exhibit and witness-list deadline applied to Plaintiff at 9:00 a.m. on May 8, 2026. Plaintiff complied. Defendants disclosed no witnesses, no exhibits, and no investigator report.

206. May 11, 2026: Defendant Kline appeared for the first time as the presider. Plaintiff first learned his identity at the moment the hearing convened. Defendants called no witnesses and produced no exhibits at the hearing.

207. May 11-May 21, 2026: During the ten calendar days between the close of the hearing and the issuance of the Final Determination, Defendants Wallace, Thornton, Kline, Choate, and Griswold each had the authority and the opportunity to disclose the impending Thornton Declaration to Plaintiff and to permit Plaintiff a meaningful written response before the Department issued its dispositive ruling.

208. None did so. During this same period the Department, by its own account, conducted the substantive merits investigation that produced the Declaration.

209. May 21, 2026: Defendant Thornton executed his sworn Declaration. Defendant Kline signed and issued the Final Agency Determination relying on the Thornton Declaration at

no fewer than thirteen separate points. The simultaneous Day 90 issuance foreclosed any administrative remedy in which Plaintiff could test the Declaration.

210. These dated, documented acts are not isolated events.

211. They are sequential steps in a single adjudicatory design, agreed upon, ratified, and executed by each of the five named Defendants, whose foreseeable and intended consequence was to extinguish Plaintiff's accepted HAVA adjudicatory claim through procedure designed to deny them any meaningful adversarial testing of the Department's evidence.

## V. Article III Standing

212. Two levels of standing. Plaintiff satisfies two complementary standing requirements:

    (a)    administrative-complaint standing under federal HAVA § 402(a)(2)(B), which expressly authorizes "any person" who believes a Title III violation occurred, is occurring, or is about to occur, to file an administrative complaint; and

    (b)    Article III standing for federal-court adjudication, established by Plaintiff Bernegger's personal participation in, and the personal injury sustained from, the accepted HAVA administrative proceeding.

213. Administrative-complaint standing. HAVA § 402(a)(2)(B), 52 U.S.C. § 21112(a)(2)(B), authorizes "any person" to file the administrative complaint. Colorado has implemented this requirement at C.R.S. § 1-1.5-105 and 8 CCR 1505-1, Rule 13.

214. Plaintiff accordingly had unquestioned statutory entry to the HAVA complaint procedure. Colorado accepted and docketed Plaintiff Bernegger's signed, sworn, and notarized

complaint, and treated Plaintiff Bernegger as a co-complainant of record in HAVA Complaint No. 2026-001.

215. Article III standing. Once Colorado accepted and docketed the sworn administrative complaint, conducted the May 11, 2026 hearing on the record, and issued the May 21, 2026 Final Agency Determination, Plaintiff Bernegger acquired a concrete, particularized, and personal stake in the constitutionally adequate adjudication of the accepted claim.

216. Plaintiff personally invoked, perfected, and participated in the HAVA proceeding. Plaintiff signed and verified the sworn administrative complaint. Plaintiff requested a hearing on the record. Plaintiff participated in the May 11, 2026 hearing. Plaintiff was denied the procedural protections described herein.

217. Plaintiff was subjected to the May 21, 2026 Final Agency Determination.

218. Plaintiff incurred time, expense, effort, reputational injury, and the loss of his accepted, docketed, state-created adjudicatory claim. Plaintiff satisfies each of the three constitutional prerequisites of injury in fact, traceability, and redressability.

219. Injury in fact. Plaintiff Bernegger suffered an actual and particularized injury in the form of:

    (a)    the deprivation of his accepted, docketed, state-created adjudicatory claim, including the procedural rights identified in Sections IV.C through IV.E above.

    (b)    the time, effort, mental anguish, emotional distress, reputational injury, and out-of-pocket expense incurred in attempting to obtain a fair adjudication of that claim against Defendants' intentional, planned, and egregious denials; and

(c)    the substantive injury of an adverse final agency determination that was procured through the constitutional violations alleged herein.

220.    Each injury is concrete and particularized.

221.    Each injury alleged is fairly and directly traceable to the conduct of one or more of the Defendants, as set forth in Sections IV.C through IV.E above.

222.    Concrete, particularized status alterations resulting from the Final Agency Determination. The May 21, 2026 Final Agency Determination concretely altered Plaintiff's legal status in the following independent respects.

223.    First, the Determination forecloses Plaintiff's statutory ability to bring further HAVA complaints based on the same underlying data, because the Determination's holdings operate by preclusive effect within the Department.

224.    Second, the Determination has been and will be used by third parties to discredit Plaintiff's ongoing election-records research, consulting, and advocacy work conducted through Election Watch, Inc.

225.    Third, Plaintiff has incurred specific out-of-pocket expense in connection with the prosecution of the administrative complaint, including filing costs, travel expense, and the time and effort necessary to participate in the May 11, 2026 hearing under oath.

226.    Fourth, Plaintiff has suffered reputational injury within the federally-protected election-records research community as a direct result of the public Final Agency Determination.

227.    These concrete, particularized status alterations independently establish Plaintiff's Article III standing and satisfy any stigma-plus framework Defendants may invoke.

228. The damages, declaratory, and limited prospective injunctive relief sought in this Complaint would redress each injury alleged.

229. The Final Agency Determination remains publicly available and capable of being cited, relied upon, or offered against Plaintiff in future administrative, judicial, reputational, fundraising, investigative, or election-integrity proceedings.

230. Because Defendants issued it as final agency action and published it as the State's official resolution of Plaintiff's sworn complaint, Plaintiff faces an ongoing and concrete risk that Defendants, their successors, or persons acting in concert with them will use it to discredit, preclude, or impair Plaintiff's future petitioning and election-integrity work.

## VI. Exhaustion Is Not Required

231. Plaintiff is not required to exhaust state administrative or judicial remedies before bringing this action under 42 U.S.C. § 1983.

232. The May 21, 2026 Final Agency Determination is the consummation of the constitutional violations alleged; it is not a prerequisite to suit.

233. Plaintiff nevertheless alleges that he pursued the federally-mandated administrative complaint procedure in good faith from February 20, 2026 through May 21, 2026, and that Defendants' conduct during that period is the conduct giving rise to this action.

## VII. Causes of Action

### Defendant-Specific Personal Participation

43

The following summary table identifies, for each Defendant, the principal dates and exhibits and the principal acts by which that Defendant personally participated in the conduct giving rise to the constitutional violations pleaded below. The summary table does not supplant the detailed factual allegations of Section IV above, which are incorporated into each Count.

| Defendant | Date / Exhibit | Specific Act | Constitutional Link |
|---|---|---|---|
| Wallace | Apr. 9, Apr. 13, Apr. 17, Apr. 21, 2026 / Exs. B-D | Drafted and transmitted the procedural denials; communicated the no-defense posture; categorically refused cross-examination; circulated the draft Notice of Hearing; refused to produce Griswold and Choate as witnesses; signed the Certificate of Service of the Final Agency Determination. | Pre-hearing design of constitutionally inadequate process; personal participation in the procedural deprivation. |
| Thornton | Apr. 9, 2026 - May 21, 2026 / Exs. B, D, G | Acted as co-designee with Wallace; co-designed the procedural framework; supervised the investigative team; executed the May 21, 2026 post-hearing Declaration that became the principal evidentiary predicate of the Final Agency Determination, never | Procurement of undisclosed adverse evidence; post-hearing record manipulation; personal participation in the procedural deprivation. |

| | | | |
|---|---|---|---|
| | | disclosed to Plaintiff in time for response. | |
| **Kline** | May 11, 2026 - May 21, 2026 / Exs. F, G, H | Concealed his identity as presider until the moment the hearing convened; presided over the May 11, 2026 hearing; ratified the pre-announced procedural denials on the record; accepted and adopted the undisclosed Thornton Declaration; signed and issued the May 21, 2026 Final Agency Determination. | Final deprivation through structurally conflicted, concealed presider; reliance on ex parte post-hearing evidence. |
| **Choate** | Apr. 9, 2026 - May 21, 2026 / Exs. A, B, D, G, H | Directly supervised Wallace and Thornton; refused, on Wallace's communication, to appear as a witness despite Plaintiff's written request; on information and belief, directed or approved the post-hearing investigation that produced the Thornton Declaration; failed to disclose, correct, or repudiate any procedural denial. | Personal participation through supervisory direction and ratification; affirmative link to the deprivation under Tenth Circuit supervisory-liability doctrine. |

45

| Griswold | Feb. 20, 2026 - May 21, 2026 / Exs. A, D, H | Named Respondent below; exercised ultimate supervisory authority; designated, or authorized the designation of, her own Deputy Secretary as the presider over a complaint directed at her own conduct; refused, on Wallace's communication, to appear as a witness despite Plaintiff's written request; permitted the Final Agency Determination to issue in her own name on the ninetieth day without corrective action. | Structural bias; personal participation through designation, ratification, and failure to correct; basis for official-capacity prospective relief. |

Count I - 42 U.S.C. § 1983: Violation of the Fourteenth Amendment Procedural Due Process Clause

(Against All Defendants, Individual Capacities for Damages; Official Capacities for Prospective Relief)

234.    Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

235.    Elements of Count I. To prevail on Count I, Plaintiff must establish that (a) each Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983; (b) Plaintiff

possessed a constitutionally protected liberty or property interest; (c) Defendants deprived Plaintiff of that interest; and (d) Defendants failed to provide constitutionally adequate process before or in connection with that deprivation. Each element is satisfied as set forth below.

236. Color of state law. Each Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983.

237. Protected property interest. Plaintiff possessed a protected property interest in his accepted, docketed, state-created adjudicatory claim, HAVA Complaint No. 2026-001.

238. Deprivation. Defendants deprived Plaintiff of that interest through the May 21, 2026 Final Agency Determination.

239. Constitutionally inadequate process. The process was constitutionally inadequate because Defendants used a structurally conflicted presider, concealed the presider's identity, denied Plaintiff meaningful confrontation of material adverse evidence, refused to produce material witnesses, imposed one-sided pre-hearing disclosure obligations, and relied materially on the undisclosed post-hearing Thornton Declaration.

240. Personal participation. Each Defendant personally participated in the deprivation as pleaded in the following paragraphs and as further detailed in Section IV above.

241. Defendant Wallace personally participated in the deprivation by drafting, signing, and transmitting each of the April 9, April 13, April 17, and April 21, 2026 emails communicating the procedural denials, by circulating the draft Notice of Hearing to her co-

designee and to Department of Law counsel for concurrence, and by signing the May 21, 2026 Certificate of Service of the Final Agency Determination.

242.   Defendant Thornton personally participated in the deprivation by acting as the named co-designee with Defendant Wallace under the April 9, 2026 framework, by co-designing the procedural structure that excluded cross-examination and witness production, by co-authoring the Notice of Hearing, by supervising the post-hearing investigative team, and by executing the May 21, 2026 sworn Declaration that became the principal evidentiary predicate of the Final Agency Determination.

243.   Defendant Kline personally participated in the deprivation by accepting the role of presider, by concealing his identity until the moment the hearing convened, by ratifying on the record the procedural denials communicated in advance, by accepting and adopting the post-hearing Thornton Declaration without disclosure to Plaintiff, and by signing and issuing the May 21, 2026 Final Agency Determination predicated upon that Declaration.

244.   Defendant Choate personally participated in the deprivation by exercising direct supervisory authority over Defendants Wallace and Thornton, by refusing to appear as a witness despite Plaintiff's written request, by acquiescing in the procedural denials with full knowledge, and, on information and belief, by directing or approving the post-hearing investigation that produced the Thornton Declaration.

245.   Defendant Griswold personally participated in the deprivation by exercising ultimate supervisory authority over the Colorado Department of State, by designating or authorizing the designation of her own Deputy Secretary as the presider over a complaint directed at

48

her own conduct, by acquiescing in the procedural denials with full knowledge as the named Respondent below, and by failing to take available corrective action with respect to a Final Agency Determination issued in her own name on the ninetieth day of the statutory window.

246. Damages. Plaintiff suffered the injuries pleaded in Section V and elsewhere in this Count.

247. Plaintiff's protected interest is his accepted, docketed, state-created adjudicatory claim, HAVA Complaint No. 2026-001, which Colorado was bound to resolve under HAVA Title III standards through constitutionally adequate process.

248. That accepted, docketed, state-created adjudicatory claim is a species of property protected by the Fourteenth Amendment's Due Process Clause.

249. Plaintiff perfected the interest on February 20, 2026 by filing his sworn, notarized administrative complaint, which Colorado accepted and docketed.

250. Defendants deprived Plaintiff of that interest by issuing the May 21, 2026 Final Agency Determination through a procedurally inadequate process, foreclosing the meaningful adjudication of Plaintiff's accepted adjudicatory claim.

251. At its core, the deprivation rests on the State's resolution of an accepted adjudicatory claim through a final agency determination that relied materially on a sworn declaration obtained after the hearing closed, never disclosed in time for meaningful response, and issued on the final day of the 90-day statutory window.

252. That core defect is independently sufficient to establish a procedural due process violation under any framework.

253. The deprivation is further constituted by, and the inferences of intent reinforced by, the following independent respects, each of which is itself sufficient to establish a violation:

254. Absence of a neutral decision-maker. The constitutional flaw is not that Defendants chose the designee procedure of 8 CCR 1505-1, Rule 13.2.9 in the abstract.

255. The constitutional flaw is that, in a proceeding directed at the Secretary of State's own administration of voter-registration records, Defendants designated as presider Defendant Griswold's own Deputy Secretary, a direct subordinate of the very official whose conduct was the subject of the accepted administrative complaint; concealed his identity until the moment the hearing convened; and then permitted him to receive, accept, and adopt as the principal evidentiary predicate of the Final Agency Determination a sworn declaration that was executed only after the hearing closed.

256. That combination, a structurally conflicted decision-maker, concealed in advance, who relies upon ex parte post-hearing evidence, is the conflict the Due Process Clause prohibits, regardless of which procedural rule provided the initial framework.

257. Concealment of presider's identity. Defendants concealed the identity of the presider until the moment the hearing convened, foreclosing any meaningful pre-hearing opportunity to move for recusal or for a change of forum. This concealment is documented in the Department Transcript.

258. Categorical denial of cross-examination. Defendants categorically refused to permit any cross-examination of any Department witness.

50

259. Refusal to produce material witnesses. Defendants categorically refused to produce Defendants Griswold and Choate as material fact witnesses despite Plaintiff's written requests, and refused to disclose any other Department witness list.

260. Refusal to disclose pre-hearing evidence. Defendants refused to produce in advance of the hearing any investigator report, exhibit list, or summary of the investigative methodology that would ultimately be relied upon in the Final Determination.

261. The May 21, 2026 Thornton Declaration ambush. Defendants made the previously-undisclosed Thornton Declaration the principal evidentiary basis for the Final Determination's merits findings, and issued the Final Determination on the very last day of the 90-day window, foreclosing any remaining administrative remedy in which Plaintiff could have tested the Declaration, including the material internal contradictions identified in Section IV.E above.

262. Established state procedure, not random or unauthorized conduct. The deprivations described above did not arise from random or unauthorized acts of state employees.

263. Each deprivation flows directly from established state procedure: the framework that Defendant Wallace identified in writing as 8 CCR 1505-1, Rule 13.2.9; the procedural rulings that Defendant Kline made on the record as Defendant Griswold's designee; and the Final Agency Determination Defendant Kline signed and issued in the name of Defendant Griswold.

264. Pre-deprivation cure was feasible; post-deprivation review is constitutionally inadequate. The constitutional deprivation was complete when Defendants issued the Final Agency Determination on Day 90 based on previously-undisclosed sworn post-hearing evidence.

265. Defendants had ten calendar days between the close of the May 11, 2026 hearing and the issuance of the May 21, 2026 Final Determination to disclose the impending Thornton Declaration and to afford Plaintiff a meaningful written response. Pre-deprivation disclosure and rebuttal were thus feasible.

266. Because Defendants chose to extinguish the accepted adjudicatory claim through an established state procedure rather than through random or unauthorized acts, any post-deprivation state judicial review, whether under C.R.S. § 1-1.5-105(4), C.R.S. § 24-4-106, or otherwise, cannot supply the pre-deprivation disclosure and adversarial testing that the Due Process Clause required and that Defendants withheld.

267. Notice not reasonably calculated. The introduction of the May 21, 2026 Thornton Declaration on the ninetieth day of the statutory window, with no prior notice to Plaintiff, no opportunity to respond, no opportunity to confront or examine the declarant, and no remaining administrative remedy in which the Declaration could be tested, was not notice reasonably calculated, under all the circumstances, to apprise Plaintiff of the pendency of the State's principal evidentiary case against their complaint or to afford him an opportunity to present his objections.

268. The Declaration's contemporaneous reduction to writing as the principal evidentiary basis for the Final Determination, on the same day, eliminated any meaningful response opportunity.

269. No reasonable official could have believed it lawful to finally deny an accepted, docketed, state-created adjudicatory claim by relying materially on sworn evidence created after the hearing, withheld from the claimants, and used as the principal evidentiary basis for final agency action issued on the last day of the statutory window without any meaningful opportunity to respond.

270. The constitutional rights of which Defendants deprived Plaintiff was clearly established at all times relevant to this Complaint, such that every reasonable official in Defendants' positions would have understood that the conduct alleged violated those rights.

271. Clearly established law, with particularity. The qualified-immunity doctrine requires that the constitutional right at issue be clearly established with particularity, not at a high level of generality. Defendants are nevertheless not entitled to qualified immunity because the rights at issue were clearly established at the requisite level of particularity at the time of their conduct.

272. At the time of Defendants' conduct, it was clearly established that a state-created adjudicatory cause of action is property protected by the Fourteenth Amendment's Due Process Clause. It was equally clearly established that the State may not finally destroy such an interest without first giving the putative owner an opportunity to present his claim of entitlement.

273. At the time of Defendants' conduct, it was clearly established in the Tenth Circuit that compliance with a state procedural statute alone does not equal constitutional process where the statute fails to afford a meaningful opportunity to be heard.

274. At the time of Defendants' conduct, it was clearly established in the Tenth Circuit that a Colorado state-created statutory cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause, and that even if due process protections do not attach to the underlying substantive determination, they attach to the state-created cause of action.

275. At the time of Defendants' conduct, it was clearly established that in almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.

276. At the time of Defendants' conduct, it was clearly established that the use of a structurally biased adjudicator violates due process, including where the presiding officer is a direct subordinate of the official whose conduct is the subject of the complaint.

277. At the time of Defendants' conduct, it was clearly established that notice of an impending deprivation must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

278. No reasonable Colorado election official could have believed that the conduct described in Sections IV.C through IV.H of this Complaint, culminating in the introduction of an undisclosed sworn declaration on the ninetieth day of the statutory window as the principal

evidentiary basis for an adverse Final Agency Determination, was lawful under any of these clearly-established principles.

279. The requirement of a neutral and detached decision-maker, and the principle that no official may sit in judgment of a matter in which he, or the superior whose conduct is at issue, holds a personal or institutional stake, were established no later than *In re Murchison*, 349 U.S. 133 (1955), under which adjudication by a decision-maker presenting a constitutionally intolerable probability of bias offends due process.

280. The right of a party to an adjudicative deprivation hearing to confront and cross-examine the adverse witnesses against him, and to a decision resting on the evidence adduced at the hearing rather than on evidence developed outside it and withheld from him, was clearly established long before Defendants' conduct.

281. The protected status of Plaintiff's accepted, docketed, state-created adjudicatory claim as property within the meaning of the Due Process Clause was clearly established long before Defendants' conduct.

282. The quantum of process due was governed by a long-established balancing framework weighing the private interest at stake, the risk of erroneous deprivation under the procedures used and the value of additional safeguards, and the government's countervailing interest.

283. Independent of any decision addressing identical facts, the unconstitutionality of Defendants' conduct was apparent in light of these pre-existing principles, and Defendants accordingly may claim no immunity for conduct whose unlawfulness was obvious.

284.    Personal involvement of each Defendant. Each named Defendant personally participated in the deprivation.

285.    Defendant Wallace participated by drafting and transmitting each of the denial emails.

286.    Defendant Thornton participated by co-designing the procedural framework, co-authoring the Notice of Hearing, supervising the post-hearing investigative team, and authoring the post-hearing Declaration without disclosure.

287.    Defendant Kline participated by presiding over the hearing, ratifying the denials on the record, accepting the post-hearing Declaration, and signing the Final Determination.

288.    Defendant Choate participated by exercising direct supervisory authority over Defendants Wallace and Thornton, by refusing to appear as a witness despite Plaintiff's written request, and by acquiescing in the denials with full knowledge.

289.    On information and belief, Defendant Choate, as Director of the Elections Division and the supervisor of Defendant Thornton, directed or approved the post-hearing investigation that produced the Thornton Declaration, which Defendant Thornton swears he "was assigned to supervise"; approved or ratified the Department position refusing to produce himself and Defendant Griswold as witnesses; and was aware of, and did not correct, the decision to withhold the Thornton Declaration from Plaintiff before issuance of the Final Determination.

290.    These allegations rest on Defendant Choate's documented supervisory authority, the structure of the Elections Division, and the Department's own records, and are pleaded on information and belief as to matters peculiarly within Defendants' knowledge.

291. Defendant Griswold participated by exercising ultimate supervisory authority over the Department; by designating, or authorizing the designation of, her own Deputy Secretary as the presider over a complaint directed at her own conduct; by acquiescing in the denials with full knowledge as the named Respondent below; and by failing to take available corrective action with respect to a final agency determination issued in her own name.

292. On information and belief, Defendant Griswold personally approved or was informed of the selection of Defendant Kline as her designee and of the issuance of the Final Agency Determination on Day 90 in her name, these matters being peculiarly within Defendants' knowledge.

293. Damages. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered actual injury, including but not limited to the loss of his accepted, docketed, state-created adjudicatory claim, time and effort expended in pursuit of objections that should have been honored, mental anguish, emotional distress, reputational injury, and out-of-pocket expense.

294. Plaintiff's professional reputation has been tarnished before the public by Defendants' actions: the public sees only that Plaintiff lost his HAVA petition to the State of Colorado, and not the constitutional violations he suffered.

295. Plaintiff is entitled to compensatory damages in an amount to be determined at trial; nominal damages in an amount of one dollar ($1.00) per Plaintiff per Defendant; and punitive damages in an amount sufficient to punish and deter.

Count II - 42 U.S.C. § 1983: Violation of the Fourteenth Amendment Substantive Due Process Clause

(Against All Defendants, Individual Capacities for Damages; Official Capacities for Prospective Relief)

296. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

297. Elements of Count II. To prevail on Count II, Plaintiff must establish that (a) each Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983; (b) Plaintiff possessed a constitutionally protected liberty or property interest; (c) Defendants engaged in government conduct that shocks the contemporary conscience; (d) Defendants acted with the requisite state of mind, namely intentional, deliberate, or reckless conduct rather than mere negligence; and (e) Defendants' conduct caused Plaintiff's injuries. Each element is satisfied as set forth below.

298. Color of state law. Each Defendant, at all times material to this Count, acted under color of state law within the meaning of 42 U.S.C. § 1983 as a constitutional officer, official, or employee of the State of Colorado, exercising authority conferred by HAVA § 402, 52 U.S.C. § 21112, C.R.S. § 1-1.5-105, and 8 CCR 1505-1, Rule 13.2.9.

299. Conscience-shocking conduct, pleaded in the alternative to Count I. Count II is pleaded in the alternative to Count I and rests on the additional, particularized theory that Defendants intentionally manipulated the adjudicatory record itself.

300. Defendants structured the hearing to avoid adversarial testing; withheld the presider's identity; withheld the Department's evidence; then created and relied upon a sworn post-hearing declaration on Day 90 to ensure that Plaintiff could not respond.

301. The conscience-shocking character of the conduct is confirmed by the nature of the evidence on which the State ultimately relied. Defendants did not merely make adverse rulings.

302. They created the decisive evidentiary record after the hearing had closed, withheld it from Plaintiff, and used it as the principal basis for an adverse Final Determination, even though, as set forth in Section IV.E above, that sworn declaration is internally contradictory and methodologically incomplete on its own face.

303. To extinguish a state-created adjudicatory claim on the strength of sworn evidence that the affiant himself contradicts within the same document, while denying the claimant any opportunity to expose those contradictions, is conduct that shocks the contemporary conscience.

304. The course of conduct described in Sections IV.C through IV.H above is, individually and cumulatively, so egregious, so outrageous, and so contrary to ordinary notions of fair dealing as to shock the contemporary conscience.

305. The conduct falls within the categories of state action that the case law of this Circuit recognizes as conscience-shocking. The conduct reflects self-dealing by the named officials whose own conduct was the subject of the administrative complaint.

59

306. The conduct further reflects deceit, in the form of concealment of material facts from Plaintiff, namely the presider's identity until the convening of the hearing and the existence of the Thornton Declaration until the issuance of the Final Agency Determination.

307. The conduct additionally reflects bias against the petitioning activity itself, and affirmative interference with Plaintiff's constitutionally protected First Amendment right to petition the government for redress of grievances.

308. The magnitude of harm is constitutional in dimension because the State's conduct extinguished Plaintiff's accepted, docketed, state-created adjudicatory claim through intentional manipulation of the evidentiary record.

309. Defendants knowingly and intentionally planned and executed a multi-stage course of action whose purpose and effect was to deprive Plaintiff of any meaningful adjudication of a federally-mandated administrative complaint while preserving the State's ability to issue a final agency determination favorable to itself.

310. The course included, among other things:

    (a)    the categorical denial of cross-examination announced in writing in April.

    (b)    the categorical refusal to produce Defendants Griswold and Choate as material witnesses.

    (c)    the unilateral selection of Defendant Griswold's own Deputy Secretary as the presider, in deliberate avoidance of the available independent adjudicator procedure.

    (d)    the concealment of the presider's identity until the hearing convened.

(e)    the imposition of a binding pre-hearing exhibit deadline on Plaintiff while reserving to the State the right to introduce its principal sworn evidence after the close of the hearing.

(f)    the execution and use of the Thornton Declaration as the principal evidentiary basis for the Final Determination, without notice, disclosure, or any opportunity to confront the affiant; and

(g)    the issuance of the Final Determination on the ninetieth day of the statutory window, foreclosing any remaining administrative remedy.

311.    Even if Rule 13 permitted a Secretary's designee in ordinary cases, due process did not permit Defendants to conceal the designee's identity, use the named respondent's own Deputy Secretary as presider, and then allow that presider to rely on undisclosed post-hearing evidence from another Department designee.

312.    The conduct was not negligent, inadvertent, or driven by exigency. It was planned and sequenced over a period of some 90 days, from the February 20, 2026 filing through May 21, 2026.

313.    It was preserved in writing by Plaintiff in correspondence dated April 13, April 21, April 27, and May 5, 2026, and orally on the record at the opening of the May 11, 2026 hearing.

314.    Defendants ratified each denial with full knowledge of the objections.

315.    Damages. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered the injuries described in Section V and in Count I above. Plaintiff is entitled to

compensatory, nominal, and punitive damages on this Count on the same bases set forth above.

Count III - 42 U.S.C. § 1983: First Amendment Retaliation for Protected Petitioning Activity, and Denial of the Right to Petition

(Against All Defendants, Individual Capacities for Damages; Official Capacities for Prospective Relief)

316. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

317. Elements of Count III. To prevail on Count III, Plaintiff must establish that (a) each Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983; (b) Plaintiff engaged in constitutionally protected First Amendment activity, including the right to petition the government for redress of grievances; (c) Defendants took adverse action against Plaintiff that would chill a person of ordinary firmness from continuing to engage in that protected activity; (d) Defendants' adverse action was substantially motivated as a response to Plaintiff's protected conduct. Each element is satisfied as set forth below.

318. Color of state law. Each Defendant, at all times material to this Count, acted under color of state law within the meaning of 42 U.S.C. § 1983 as a constitutional officer, official, or employee of the State of Colorado, exercising authority conferred by HAVA § 402, 52 U.S.C. § 21112, C.R.S. § 1-1.5-105, and 8 CCR 1505-1, Rule 13.2.9.

319. Two alternative First Amendment theories. Plaintiff pleads two distinct, alternative First Amendment theories in this Count. The first is the retaliation theory, under which

62

Defendants took adverse action against Plaintiff in retaliation for, and substantially motivated by, his protected petitioning activity. The second, pleaded in the alternative, is the denial-of-meaningful-access theory, under which Defendants converted the petitioning forum the State affirmatively undertook to provide into a sham proceeding, thereby constructively denying Plaintiff the access to which the First Amendment Petition Clause entitled him. Each theory is independently sufficient to establish a First Amendment violation.

320. Plaintiff does not claim a Petition Clause right to a favorable outcome or to any particular substantive response. Plaintiff claims a Petition Clause right against state retaliation, suppression, and constructive denial of meaningful access to the formal adjudicatory machinery that Colorado created for the express purpose of receiving and adjudicating his grievances.

321. Once the State accepted Plaintiff's sworn HAVA complaint, docketed it, scheduled and convened a hearing on the record, and held itself out as providing an adjudicatory forum, the State could not lawfully use that forum to issue an adverse final determination resting on undisclosed post-hearing evidence Plaintiff had no opportunity to confront.

322. Sham process is not access; it is the antonym of access. Plaintiff's First Amendment injury is the constructive denial of the petitioning access the State affirmatively undertook to provide.

323. The First Amendment protects the right of the people to petition the Government for a redress of grievances. The filing and prosecution of an administrative complaint with the

chief state election official under HAVA § 402, 52 U.S.C. § 21112, and C.R.S. § 1-1.5-105, is protected petitioning activity.

324. The HAVA § 402 procedure is, by Congress's design, a formal mechanism by which any person may petition state government for redress of asserted federal violations. Plaintiff engaged in that protected activity by filing and prosecuting HAVA Complaint No. 2026-001.

325. The First Amendment right to be free from government retaliation for protected petitioning activity was clearly established at all times relevant to this Complaint.

326. The filing and prosecution of a formal administrative complaint under HAVA § 402 and C.R.S. § 1-1.5-105 is a paradigmatic exercise of the right to petition the government for redress of grievances, and the unlawfulness of retaliating against that activity would have been apparent to every reasonable official in Defendants' positions.

327. Because Defendants were neither Plaintiff's employer nor parties to any contract with Plaintiff, the governing standard is the Tenth Circuit's three-element retaliation framework, well-established as follows. That the plaintiff engaged in constitutionally protected activity; that the defendant's action caused an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and that the defendant's adverse action was substantially motivated as a response to the protected conduct.

328. Under that settled framework, any form of official retaliation for exercising First Amendment freedoms, including bad-faith investigation and legal harassment, infringes those freedoms.

64

329. The Department's post-hearing, off-the-record merits investigation, its conversion of the petitioning forum into a sham, and its issuance of a public determination branding Plaintiff's sworn allegations as "without merit" are precisely such forms of official retaliation.

330. The unlawful intent inherent in a retaliatory action, moreover, places it beyond the scope of any qualified immunity where, as here, the right retaliated against was clearly established.

331. Defendants took adverse action against Plaintiff that was distinct from any single procedural ruling, by converting the petitioning forum into a sham, by issuing an adverse public Final Agency Determination predicated on undisclosed and untested sworn evidence, and by publishing a determination that characterizes Plaintiff's sworn allegations as "factually inaccurate" and "without merit" while denying Plaintiff any opportunity to expose the internal contradictions in the Department's own evidence.

332. The adverse action would chill a person of ordinary firmness from filing or prosecuting future administrative election-integrity complaints. An individual who learns that the State will accept a sworn complaint, deny the complainant cross-examination and witnesses, develop the dispositive evidence after the hearing, and issue a public determination branding the complainant's sworn allegations as meritless, without any opportunity to respond, would be deterred from petitioning again.

333. The timing, content, and coordinated nature of Defendants' conduct support the inference that the adverse actions were substantially motivated by Plaintiff's protected petitioning

activity and the viewpoint it expressed concerning the administration of Colorado's voter-registration records.

334. As alleged in Count IV below, Defendant Griswold had a personal political interest, as a candidate for higher office whose own conduct was the subject of the complaint, in defeating and discrediting the petition; and the appointed Defendants each had a personal employment and reputational interest in ensuring that no adverse finding was entered against Defendant Griswold or the Department.

335. The motive facts pleaded against each Defendant in Section III, Section IV.H, and Count IV are incorporated here defendant-by-defendant.

336. Denial of meaningful access, in the alternative. In the alternative, and independently, Defendants' planned and intentional denials described in Sections IV.C through IV.G above, including the categorical denial of cross-examination, the refusal to produce material witnesses, the concealment of the presider's identity, the unilateral selection of a non-neutral adjudicator, the imposition of one-sided pre-hearing disclosure obligations, and the post-hearing ambush by the Thornton Declaration, denied Plaintiff meaningful access to the petitioning forum that Congress and the State of Colorado established for the express purpose of receiving and adjudicating his grievances.

337. A petitioning forum that systematically forecloses adversarial testing of the petitioning party's claims, and that issues an adverse final determination through procedurally inadequate process, is not in any constitutionally meaningful sense open within the meaning of the Petition Clause.

338. Personal involvement and damages. The allegations of personal involvement and damages set forth in Count I, and the injury allegations set forth in Section V above, are incorporated by reference and apply to Count III. Plaintiff is entitled to compensatory, nominal, and punitive damages on this Count on the same bases set forth above.

Count IV - 42 U.S.C. § 1983: Civil-Rights Conspiracy to Conduct a Sham Hearing

(Against All Defendants, Individual Capacities for Damages; Official Capacities for Prospective Relief)

339. Plaintiff incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

340. Agreement. Beginning no later than April 9, 2026 and continuing through May 21, 2026, Defendants Wallace, Thornton, Kline, Choate, and Griswold reached an agreement to conduct the May 11, 2026 hearing as a non-adversarial, one-sided proceeding whose principal evidentiary basis would be introduced after the hearing had closed, and then to issue the Final Determination on the ninetieth day of the statutory window together with the undisclosed Thornton Declaration.

341. That agreement is evidenced by, among other things, the email correspondence between Defendants and counsel for the Department, the coordinated preparation of the April 21, 2026 Notice of Hearing, the joint selection of the Rule 13.2.9 designee framework over the available independent Administrative Hearing Officer procedure, and the joint preparation and timing of the May 21, 2026 Thornton Declaration and Final Agency Determination.

342. Factual basis for the agreement. The agreement is supported by, among other things, the following facts apparent from the Department's own records:

67

(a)     the April 9, 2026 Wallace email identified Defendants Wallace and Thornton as co-designees and announced in advance that the Division would not defend.

(b)     the April 17, 2026 Wallace email was sent to Defendant Thornton, to Department of Law attorneys Talia Kraemer and Elliot Hood, and to Department information-technology staff member "Nathan," stated that "Caleb and I have been working on the Notice of Hearing," solicited the recipients' concurrence, and proposed the one-sided May 8 exhibit deadline.

(c)     the April 21, 2026 Notice of Hearing was thereafter issued in the form so circulated, without identifying the presider.

(d)     Defendant Thornton swears that he "was assigned to supervise the investigative team," received Plaintiff's exhibits on May 7, 2026, and conducted his analysis thereafter; and

(e)     the Final Agency Determination, signed by Defendant Kline, relied on the Thornton Declaration at no fewer than thirteen points.

343.    To the extent the precise internal communications, the date Defendant Kline was selected as presider, the date the Thornton Declaration was drafted, and the identity of the official who decided to withhold it are matters peculiarly within Defendants' knowledge, they are pleaded on information and belief and are the proper subject of discovery.

344.    Object, deprivation of constitutional rights. The object of the agreement was to deprive Plaintiff of his First and Fourteenth Amendment rights as described in Counts I, II, and III above, including but not limited to the right to procedural due process, the right to

substantive due process, the right to petition the government for redress of grievances, and the right to be free from retaliation for protected petitioning activity.

345.    In furtherance of the agreement, Defendants undertook the following overt acts, among others:

(a)    the April 9, 2026 Wallace email designating Defendants Wallace and Thornton as designees and announcing that the Division would not mount a defense.

(b)    the April 13, 2026 Wallace email categorically refusing cross-examination, on a position Plaintiff alleges, on information and belief, was approved or directed by Defendants Choate and/or Griswold.

(c)    the April 17, 2026 Wallace email circulating the draft Notice of Hearing to Defendant Thornton, to Department of Law attorneys Talia Kraemer and Elliot Hood, and to Department information-technology staff member "Nathan," expressly soliciting their concurrence in and approval of the procedural design, including the May 8 exhibit deadline.

(d)    the April 21, 2026 Wallace email refusing to produce Defendants Griswold and Choate as witnesses, on a position Plaintiff alleges, on information and belief, was personally directed by Defendant Griswold and/or her subordinates.

(e)    the April 21, 2026 Notice of Hearing concealing the presider's identity, on terms Plaintiff alleges, on information and belief, reflected a deliberate decision by Defendants Wallace, Thornton, and Kline to defer identification until after Plaintiff's opportunity to challenge the presider's neutrality had passed.

(f)     the pre-hearing selection of Defendant Kline as presider, on a date not presently known to Plaintiff but pleaded, on information and belief, as occurring on or before April 21, 2026.

(g)     the May 11, 2026 conduct of the hearing by Defendant Kline, ratifying the foregoing denials on the record.

(h)     the post-hearing preparation and execution of the May 21, 2026 Thornton Declaration, by the investigative team Defendant Thornton swears he supervised, on terms Plaintiff alleges, on information and belief, reflected coordinated drafting between Defendants Thornton and Kline in the days following the May 11 hearing and prior to the issuance of the Final Determination.

(i)     the May 11-21 decision by one or more of Defendants Wallace, Thornton, Kline, Choate, and Griswold not to disclose the impending Thornton Declaration to Plaintiff in advance of the Final Determination, despite ten calendar days in which any one of them could have done so.

(j)     the May 21, 2026 execution and issuance, by Defendant Kline, of the Final Agency Determination predicated on the Thornton Declaration; and

(k)     the contemporaneous failures of Defendants Griswold and Choate, as supervisory officials with actual notice of Plaintiff's preserved objections, to disclose, correct, or repudiate any of the foregoing acts.

70

346. Independent overt acts of agreement and concealment. The conspiracy alleged in this Count rests not only on the underlying constitutional violations but also on independent overt acts of agreement and concealment among the named Defendants.

347. These independent acts include the pre-hearing concealment of Defendant Kline's identity as presider, the coordinated timing of the Thornton Declaration filing on the ninetieth day of the statutory window, the May 11 through May 21 decision by one or more named Defendants not to disclose the impending Thornton Declaration despite ten calendar days of opportunity, and the joint use of common Department of Law counsel to coordinate the procedural framework.

348. These acts demonstrate agreement and concealment independent of, and in addition to, the underlying deprivation.

349. Plaintiff was in fact deprived of each of the rights identified in Counts I, II, and III above. The May 21, 2026 Final Agency Determination is the consummation of the deprivation.

350. The acts described above were not undertaken solely in furtherance of any legitimate state interest. The acts were taken, at least in part, for the personal motivations of Defendants.

351. Defendant Griswold is a state-wide elected official and a publicly announced candidate for the Office of Attorney General of the State of Colorado, whose continuation in her current office and whose prospects of election to higher office turn on the electorate's continuing confidence in her conduct as Secretary of State.

352. At all times relevant to this Complaint, Defendant Griswold had a direct, personal political interest in avoiding being called as a sworn witness in a proceeding concerning her own

administration of voter-registration records, in avoiding an adverse final agency determination during an active campaign for higher office, and in obtaining a final agency determination favorable to herself that could be cited on the campaign trail.

353.   The pendency of her Attorney General campaign during the entire 90-day window of HAVA Complaint No. 2026-001 supplied Defendant Griswold with personal political motivations distinct from any legitimate state institutional interest in the neutral administration of the federally-mandated complaint procedure.

354.   Defendants Choate, Kline, Wallace, and Thornton are appointed officials who serve at the pleasure of, or under the supervisory authority of, Defendant Griswold and whose continued employment and professional standing depend on her satisfaction with their performance; each had a personal employment, professional, and reputational interest in ensuring that no adverse finding was made against Defendant Griswold or against the Department.

355.   Defendant Thornton, additionally, had a personal interest in avoiding being called as a sworn witness subject to cross-examination concerning the methodology of the investigation he conducted and supervised, the contradictions in which are identified in Section IV.E above.

356.   Each Defendant's conduct in furtherance of the agreement was, at least in part, personally motivated within the meaning of the case law of this Circuit, and was not within the legitimate scope of any state employment.

357.    Damages. As a direct and proximate result of the conspiracy, Plaintiff has suffered the injuries described in Section V and in Count I above. Plaintiff is entitled to compensatory damages in an amount to be determined at trial; nominal damages of one dollar ($1.00) per Plaintiff per Defendant; and punitive damages in an amount sufficient to punish and deter the planned and intentional course of conduct alleged herein.

VIII. Prayer for Relief

WHEREFORE, Plaintiff Peter Bernegger respectfully requests that this Court enter judgment in his favor and against Defendants Jena Griswold, Judd Choate, Andrew Kline, Kathleen Wallace, and Caleb Thornton as follows:

A.    AWARD Plaintiff compensatory damages against Defendants in their individual capacities, jointly and severally to the extent permitted by law, in an amount to be determined by the jury at trial.

B.    AWARD Plaintiff nominal damages of one dollar ($1.00) per Defendant, per claim, or in such other nominal amount as the Court deems legally appropriate, to vindicate the constitutional rights at issue.

C.    AWARD Plaintiff punitive damages against each Defendant in his or her individual capacity in an amount to be determined by the jury and sufficient to punish and deter the planned, intentional, and reckless course of conduct alleged herein.

D.    DECLARE, pursuant to 28 U.S.C. § 2201, that the conduct of Defendants Griswold, Choate, Kline, Wallace, and Thornton, in connection with the design,

communication, and implementation of the procedural denials in HAVA Complaint No. 2026-001, the conduct of the May 11, 2026 hearing, the post-hearing creation and use of the May 21, 2026 Thornton Declaration, and the issuance of the May 21, 2026 Final Agency Determination, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

E.      DECLARE that the May 21, 2026 Final Agency Determination was issued through constitutionally inadequate process and is invalid and of no force or effect as against Plaintiff, and may not be used against him, to the extent it purports to adjudicate, determine, reject, discredit, or dispose of Plaintiff's accepted, docketed, state-created adjudicatory claim, unless and until Plaintiff receives a constitutionally adequate adjudication of HAVA Complaint No. 2026-001.

F.      DECLARE that the May 21, 2026 Final Agency Determination shall have no preclusive, evidentiary, precedential, or impeachment effect against Plaintiff unless and until Plaintiff receives a constitutionally adequate adjudication of HAVA Complaint No. 2026-001.

G.      ENJOIN Defendants in their official capacities, together with their officers, agents, servants, employees, attorneys, successors in office, and all persons in active concert or participation with them within the meaning of Fed. R. Civ. P. 65(d)(2), from offering, citing, using, relying upon, or treating the May 21, 2026 Final Agency Determination as precedent, evidence, legal authority, preclusion, or

74

impeachment against Plaintiff in any future administrative, judicial, investigative, governmental, or election-integrity proceeding.

H.    ORDER Defendants in their official capacities to cease publishing or presenting the May 21, 2026 Final Agency Determination as an official resolution of HAVA Complaint No. 2026-001, and to append to any retained or published copy a notice stating that the determination was adjudged to have been issued through constitutionally inadequate process and may not be used against Plaintiff.

I.    ORDER Defendants in their official capacities, as a remedy under 42 U.S.C. § 1983 for the deprivation of Plaintiff's state-created property interest in his accepted, docketed adjudicatory claim, sought in the alternative to or in addition to the damages and declaratory relief requested above, and not as an action to enforce the Help America Vote Act or as a concession that any state remedy was adequate or required, to reopen, remand, or conduct a new constitutionally adequate adjudication of HAVA Complaint No. 2026-001 before a neutral decision-maker who:

(1)    was not involved in the investigation, procedural design, hearing, Thornton Declaration, or May 21, 2026 Final Agency Determination.

(2)    is not subordinate to, controlled by, or structurally aligned with any named Defendant whose conduct was at issue in HAVA Complaint No. 2026-001.

(3)     discloses his or her identity, role, appointment authority, and any actual or potential conflicts of interest sufficiently in advance of the hearing to permit a meaningful objection or motion for recusal; and

(4)     decides the matter based only on evidence disclosed to Plaintiff and made part of the hearing record.

J.      ORDER that any reopened or new adjudication of HAVA Complaint No. 2026-001 include, at a minimum:

(1)     advance written notice of the presider's identity, role, appointment authority, and conflicts of interest.

(2)     a meaningful opportunity for Plaintiff to object to or seek recusal of the presider.

(3)     advance disclosure of all Department evidence, witness lists, exhibit lists, investigator reports, declarations, data analyses, SCORE records, communications, and materials on which the Department intends to rely.

(4)     advance disclosure of the May 21, 2026 Thornton Declaration and all records, data, communications, analyses, and source materials on which it is based.

(5)     a meaningful opportunity for Plaintiff to submit rebuttal evidence and written objections.

(6)     a meaningful opportunity to examine or cross-examine any material adverse witness, declarant, investigator, SCORE analyst, SCORE manager, or

Department official whose statements, findings, conclusions, or sworn assertions are relied upon.

(7)    written rulings on Plaintiff's preserved objections.

(8)    a prohibition on reliance upon ex parte post-hearing evidence unless that evidence is disclosed to Plaintiff with a meaningful opportunity to respond before final agency action.

(9)    a final determination based only on evidence disclosed to Plaintiff and included in the record; and

(10)    a written explanation of the evidentiary basis for any final determination.

K.    ORDER that Plaintiff's participation in any Court-ordered remedial adjudication shall not waive, release, moot, or impair Plaintiff's claims for compensatory, nominal, or punitive damages, costs, fees, or declaratory relief arising from Defendants' original unconstitutional conduct.

L.    AWARD Plaintiff his taxable costs of this action under Fed. R. Civ. P. 54(d), and, if Plaintiff retains counsel in this action, reasonable attorneys' fees under 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d)(2); and

M.    GRANT such other and further relief as the Court deems just and proper, including further necessary or proper relief under 28 U.S.C. § 2202.

## IX. Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this ___14___ day of June, 2026.


Peter Bernegger, Plaintiff
1806 Brynwood Trace
New London, Wisconsin 54961
Telephone: (920) 551-0510
Email: peter@electionwatch.info



Index of Exhibits

The following exhibits are attached to and incorporated by reference in this Complaint:

Exhibit A - February 20, 2026 verified HAVA Administrative Complaint No. 2026-001.

Exhibit B - April 9, 2026 email from Kathleen Wallace (designation of designees; statement that the Division will not mount a defense).

Exhibit C - April 13, 2026 email from Kathleen Wallace (categorical refusal of cross-examination).

Exhibit D - April 21, 2026 Notice of Hearing and accompanying email (refusal to produce Secretary Griswold and Director Choate; designation of Rule 13.2.9 framework).

Exhibit E, E2 - Plaintiff's April 21 and April 27, 2026 written objections and replies.

Exhibit F - May 11, 2026 hearing transcript, published by the Colorado Secretary of State on or about May 28, 2026 (the "Department Transcript").

Exhibit G - May 21, 2026 Declaration of Caleb Thornton.

Exhibit H - May 21, 2026 Final Agency Determination signed by Andrew Kline.